# EXHIBIT B

## IN THE SUPERIOR COURT OF WHITFIELD COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| JOSHUA PARNELL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) Civil Action Number: |
| v. | ) |
| | ) 13CI1812-J |
| WESTERN SKY FINANCIAL, | ) |
| LLC, d/b/a Western Sky Funding, | ) |
| Western Sky, | ) |
| WesternSky.com; | ) |
| MARTIN A. ("Butch") WEBB; & | ) **JURY TRIAL DEMANDED** |
| CASHCALL, INC., | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

> Western Sky Financial, LLC
> Registered Agent:  Martin A. Webb
> 612 East Street
> Timber Lake, South Dakota  57656

You are hereby summoned and required to file with the clerk of said court and serve upon the plaintiff's attorney, whose name and address is: James W. Hurt, Jr., Esq., HURT STOLZ, P.C., 345 West Hancock Avenue, Athens, Georgia 30601, Telephone: (706) 395-2750, an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Dated: _____Dec. 6,_____, 2013.

Clerk of Superior/State Court

By: _____Melissa Kendrick_____

~~Deputy~~ Clerk

## IN THE SUPERIOR COURT OF WHITFIELD COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| JOSHUA PARNELL,<br><br>    **Plaintiff,**<br><br><br>**v.**<br><br>WESTERN SKY FINANCIAL,<br>LLC, d/b/a Western Sky Funding,<br> Western Sky,<br>WesternSky.com;<br>MARTIN A. ("Butch") WEBB; &<br>CASHCALL, INC.,<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action Number:

13 CI 1812-J

JURY TRIAL DEMANDED

### SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

    **Martin A. ("Butch") Webb**
    **612 East Street**
    **Timber Lake, South Dakota  57656**

    You are hereby summoned and required to file with the clerk of said court and serve upon the plaintiff's attorney, whose name and address is: James W. Hurt, Jr., Esq., HURT STOLZ, P.C., 345 West Hancock Avenue, Athens, Georgia 30601, Telephone: (706) 395-2750, an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Dated: _____Dec. 6,_____, 2013.

                          Clerk of Superior/State Court

    By: _Melica Kendrick_____

                               ~~Deputy~~ Clerk

FILED
WHITFIELD COUNTY, GA
2013 DEC -6  AM 11: 46
Melissa Kendrick
CLERK OF SUPERIOR COURT

Page 1 of 1

**IN THE SUPERIOR COURT OF WHITFIELD COUNTY**
**STATE OF GEORGIA**

JOSHUA PARNELL,                              )
                                            )
        Plaintiff,                          )
                                            )
                                            )
v.                                          )        **Civil Action Number:**
                                            )
                                            )        13CI 1812-J
WESTERN SKY FINANCIAL,                      )
LLC, d/b/a Western Sky Funding,             )
 Western Sky,                               )
WesternSky.com;                             )
MARTIN A. ("Butch") WEBB; &                 )        **JURY TRIAL DEMANDED**
CASHCALL, INC.,                             )
                                            )
        Defendants.                         )
                                            )

**SUMMONS**

**TO THE ABOVE NAMED DEFENDANT:**

        **Cashcall, Inc.**
        **Registered Agent:  National Registered Agents, Inc.**
        **818 West Seventh Street**
        **Los Angeles, California  90017**

        You are hereby summoned and required to file with the clerk of said court and serve
upon the plaintiff's attorney, whose name and address is: James W. Hurt, Jr., Esq., HURT
STOLZ, P.C., 345 West Hancock Avenue, Athens, Georgia 30601, Telephone: (706) 395-
2750, an answer to the complaint which is herewith served upon you, within 30 days after
service of this summons upon you, exclusive of the day of service. If you fail to do so,
judgment by default will be taken against you for the relief demanded in the complaint.

Dated: _____Dec. 6_____, 2013.

                                        Clerk of Superior/State Court

                        By: _____Melissa Kendrick_____

                                        ~~Deputy~~ Clerk

Page 1 of 1

IN THE SUPERIOR COURT OF WHITFIELD COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| JOSHUA PARNELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action Number: |
| v. | ) | |
| | ) | 13CI 1812-J |
| WESTERN SKY FINANCIAL, | ) | |
| LLC, d/b/a Western Sky Funding, | ) | |
| Western Sky, | ) | |
| WesternSky.com; | ) | |
| MARTIN A. ("Butch") WEBB; & | ) | JURY TRIAL DEMANDED |
| CASHCALL, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES IN CLASS ACTION

COMES NOW Plaintiff Joshua Parnell, on behalf of himself and all others similarly situated, and files this Complaint For Damages In Class Action, and shows this Honorable Court the following:

## INTRODUCTION

1.

This is a Class Action Complaint brought to obtain declaratory, injunctive and monetary relief on behalf of a class of individuals who responded to advertisements made by a group of affiliated business entities and individuals; Western Sky Financial LLC, CashCall, Inc., and Martin A. "Butch" Webb; (collectively "Defendants") and offering consumer loans to Georgia residents via the internet, telephone, and television advertising.

2.

Defendants conspired to charge illegal interest rates and defraud Georgia consumers by stating that the lenders and collectors are exempt from United States laws because of an affiliation with the Cheyenne River Sioux Tribe (hereinafter the "Sioux Tribe").

3.

The Defendants marketed exploitive loans which charged outrageous and illegal interest rates to the Plaintiff and members of the class.

## JURISDICTION

4.

The Court has subject matter jurisdiction over this action pursuant to Ga. Const. Art. VI, § IV, Para. I.

5.

The Court has personal jurisdiction over Defendants pursuant to OCGA §§ 9-10-90 and 9-10-91 because Defendants transact business within the State of Georgia and this action arises out of Defendants' activities within the State of Georgia.

6.

Venue is proper in this forum pursuant to OCGA § 9-10-93 because a substantial part of Defendants' business is transacted within this judicial district.

## PARTIES

7.

Plaintiff is a natural person residing in Tunnel Hill, Whitfield County, Georgia.

8.

Defendant Western Sky Financial, LLC, (hereinafter "Western Sky") is a South Dakota limited liability company with its principal place of business at 612 E Street, Timber Lake, South Dakota.

9.

Western Sky may be served with process on its registered agent, Martin A. Webb, at 612 E Street, Timber Lake, South Dakota 57656.

10.

Western Sky transacts business in Georgia and within this judicial district by offering, making, and collecting payments on payday loans to consumers in Georgia.

11.

Western Sky has not registered with the Georgia Secretary of State and is not authorized to transact business in Georgia.

12.

Western Sky is subject to the jurisdiction of this Court pursuant to the Georgia Long Arm Statute, OCGA § 9-10-91, as Western Sky transacts business within the state, has committed a tortious act or omission within this state, and/or has committed a tortious injury in this state caused by an act or omission outside this state.

13.

Western Sky regularly does and solicits business, and engages in any other persistent courses of conduct, and derives substantial revenue from services rendered in this state.

14.

Defendant Martin A. "Butch" Webb (herein, "Webb") resides in South Dakota.

15.

Webb is the sole owner, executive officer, and registered agent of Western Sky.

16.

Webb may be served with process at 612 E Street, Timber Lake, South Dakota 57656.

17.

Webb transacts business in Georgia and within this judicial district by offering, making, and collecting payments on payday loans to consumers in Georgia.

18.

Webb has not registered with the Georgia Secretary of State and is not authorized to transact business in Georgia.

19.

Webb is subject to the jurisdiction of this Court pursuant to the Georgia Long Arm Statute, OCGA § 9-10-91, as Webb transacts business within the state, has committed a tortious act or omission within this state, and/or has committed a tortious injury in this state caused by an act or omission outside this state.

20.

Webb regularly does and solicits business, and engages in any other persistent courses of conduct, and derives substantial revenue from services rendered in this state.

21.

Defendant CashCall, Inc. (herein, "CashCall") is a California corporation with principal place of business at 1600 S. Douglass Road, Anaheim, California.

22.

CashCall may be served with process on its registered agent, National Registered Agents, Inc., at 818 West Seventh Street, Los Angeles, California 90017.

23.

CashCall transacts business in Georgia and within this judicial district by offering, originating, servicing, and collecting payments on payday loans to consumers in Georgia.

24.

CashCall has not registered with the Georgia Secretary of State and is not authorized to transact business in Georgia.

25.

CashCall is subject to the jurisdiction of this Court pursuant to the Georgia Long Arm Statute, OCGA § 9-10-91, as CashCall transacts business within the state, has committed a tortious act or omission within this state, and/or has committed a tortious injury in this state caused by an act or omission outside this state.

26.

CashCall regularly does and solicits business, and engages in any other persistent courses of conduct, and derives substantial revenue from services rendered in this state.

## FACTUAL ALLEGATIONS AS TO ALL PLAINTIFFS

27.

Western Sky is engaged in the business of making personal, unsecured loans over the internet to consumers in Georgia and throughout the United States.

28.

Western Sky advertises, markets, and solicits its loan services to Georgia consumers through television advertising and its Internet website located at www.westernsky.com.

29.

Western Sky is solely owned and operated by Webb and is the *de facto* alter ego business for Webb.

30.

Western Sky's website advertises and offers a variety of loan products, including loans of $850.00, $1,500.00, and $2,600.00.

31.

The loans have annual percentage rates ("APRs") of approximately 140% to 343% and initial fees of $75.00 to $500.00.

32.

Payments are made in monthly installments, and the length of the loan ranges from twelve (12) to forty-seven (47) months.

33.

Georgia consumers interested in obtaining a loan from Western Sky complete an online application via Western Sky's website or call an advertised toll-free telephone number to apply.   Once approved, Western Sky disburses the loan funds by electronically transmitting money to the consumer's bank account located in Georgia.

34.

As part of the loan application process, Western Sky requires that Georgia consumers authorize Western Sky to electronically debit funds from the Georgia

consumer's bank account for the scheduled monthly installment payments, which are then taken from the Georgia consumer's same bank account in Georgia.

35.

Within approximately three to five business days after the loan is funded by Western Sky, the loan is assigned or sold to Defendant CashCall. CashCall remains the servicer of the loan and manages the collection of payment.

36.

All of CashCall's operations occur outside of the boundaries of any lands currently recognized by the United States government as belonging to the Sioux Tribe.

37.

All loans offered and made by CashCall to Georgia consumers are funded by Western Sky, which electronically transmits the loan proceeds to the consumer's bank account in Georgia once the loan is approved.

38.

Defendants are not licensed to engage in consumer lending in Georgia pursuant to the Georgia Industrial Loan Act (hereinafter "GILA") and are not exempt from GILA.

39.

The interest rates on Defendants' loan products exceed the allowable interest rate of 10% that may be charged by licensed lenders under GILA pursuant to OCGA § 7-3-14.

40.

Western Sky is not a bank or thrift chartered under the laws of the United States.

41.

Western Sky is not a bank chartered under the laws of another state

42.

Western Sky is not insured by the Federal Deposit Insurance Corporation ("FDIC").

43.

CashCall is not a bank or thrift chartered under the laws of the United States.

44.

CashCall is not a bank chartered under the laws of another state.

45.

CashCall is not insured by the FDIC.

46.

All consumers applying for a loan through Western Sky or CashCall are required to electronically sign a loan agreement entitled the "Western Sky Consumer Loan Agreement" ("Loan Agreement") that identifies Western Sky as the lender for the loan.

47.

The Loan Agreement contains the following terms:

> This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation. By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and that no other state or federal law of regulation shall apply to this Loan Agreement, its enforcement or interpretation.   You also expressly agree that this Agreement shall be subject to and construed in accordance only with the provisions of the laws of the Cheyenne River Sioux Tribe, and that no United States state or federal law applies to this Agreement.

48.

The Loan Agreement also contains an arbitration clause stating, "[A]ny dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration . . . which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement."

49.

While Western Sky operates within the boundaries of the Cheyenne River Sioux Reservation, Western Sky is not an arm of the Sioux Tribe.

50.

The Sioux Tribe does not have any ownership interest or operating role in Western Sky.

51.

Webb is a member of the Sioux Tribe, but he is not a tribal official and does not operate his lending business in any official tribal capacity.

**FACTUAL ALLEGATIONS AS TO PLAINTIFF JOSHUA PARNELL**

52.

In our about June of 2012, Plaintiff Joshua Parnell was watching television in the state of Georgia and saw a television advertisement for Western Sky and its website, westernsky.com.

53.

Plaintiff Joshua Parnell had recently completed his service with the United States Army and was in a financially complicated period, so he was interested in the short-term loans being advertised by the Defendants.

54.

Plaintiff Joshua Parnell accessed the website westernsky.com from his computer in Georgia and completed an online application for a loan and he submitted his loan application online.

55.

Within ten minutes of submitting his application online at westernsky.com, Plaintiff Joshua Parnell received a phone call from a Western Sky employee who stated that Plaintiff Joshua Parnell had been approved for a loan in the amount of one thousand dollars ($1,000.00).

56.

The Western Sky employee told Plaintiff Joshua Parnell to check his email for a document which would request his digital signature.  Plaintiff Joshua Parnell received a document entitled "Western Sky Consumer Loan Agreement" dated June 6, 2012 (herein, the "Parnell Loan Agreement").  A true a correct copy of the Parnell Loan Agreement is attached hereto as Exhibit A.

57.

The Parnell Loan Agreement states that, "[Plaintiff Joshua Parnell] further agree that you have executed the Loan Agreement as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation; and that this Loan Agreement is fully performed within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation."

58.

The Parnell Loan Agreement provides that Plaintiff Joshua Parnell would receive a loan in the amount of one thousand dollars ($1,000.00), be subject to a "prepaid finance charge/origination charge" of five hundred dollars ($500.00), and interest calculated at 149.00 % per annum. The Parnell Loan Agreement includes a "Truth In Lending Act Disclosure Statement" which states that the annual percentage rate is 232.99%, the finance charge totals three thousand nine hundred five dollars and fifty six cents ($3,905.56), bringing the total amount of payments to four thousand nine hundred five dollars and fifty-six cents ($4,905.56).

59.

The Parnell Loan Agreement also states that Plaintiff Joshua Parnell shall make his first payment in the amount of one hundred forty-nine dollars ($149.00) due on July 1, 2012 and then 24 monthly payments of one hundred ninety-eight dollars and nineteen cents ($198.19) beginning on August 1, 2012.

60.

Plaintiff Joshua Parnell digitally signed the Parnell Loan Agreement, and within 72 hours received a direct deposit of funds in the amount of one thousand dollars ($1,000.00) into his bank account in the state of Georgia.

61.

Further in June of 2012, Plaintiff Joshua Parnell received notice from CashCall that CashCall was now servicing his loan from Western Sky, and that all of his payments shall be made to CashCall.

62.

Plaintiff Joshua Parnell has made all of his loan payments to CashCall. A true and correct statement of Plaintiff Joshua Parnell's payments to CashCall is attached hereto as Exhibit B.

## CLASS ACTION ALLEGATIONS

63.

This action is brought by the Plaintiff individually and as a class action under the provisions of OCGA § 9-11-23 for damages and injunctive relief.

64.

The class of Plaintiffs for whose benefit the named Plaintiff brings this action is defined as follows (referred to herein as the "Plaintiff Class Members"):

> All persons, while residing in the State of Georgia, with whom Defendants Western Sky Financial, LLC, CashCall, Inc. and/or Martin A. "Butch" Webb entered into loan agreements and/or loaned funds and/or received payments from said Georgia residents.

65.

On information and belief, the named Plaintiff was solicited through a standard marketing scheme and Plaintiff was thereby offered Defendants' standard loan transaction. Such marketing and services are typical of those offered to the proposed Plaintiff Class Members.

66.

On information and belief, the interest rates charged by Defendants to the proposed Plaintiff Class Members are uniformly assessed to every customer of Defendants and can readily be determined from a ministerial review of the records of Defendants.

67.

On information and belief, the loan agreement entered into between Defendants and Plaintiff is a standard contract of adhesion entered into between Defendants and each of the clients to which Defendants loaned money who reside in the State of Georgia.

68.

The names and addresses of the Plaintiff Class Members can readily be determined through the records of Defendants pertaining to the making of illegal loans and the collection of illegal fees and interest.

69.

The fees and interest charged by Defendants can be readily determined from a ministerial review of Defendants' accounting records.

70.

The membership of the class is numerous and joinder of individual plaintiffs is impractical.  On information and belief, Defendants have loaned money and collected illegal interest from over one hundred residents of the State of Georgia.

71.

There are questions of law and fact common to all members of the Plaintiff class, and these common questions of law and fact predominate over any individual issues. The principle questions pertinent to the classes as a whole include:

     a) Whether Defendants' standard means of doing business constitutes "payday lending" under OCGA §§ 16-17-1 *et seq.*;

     b) Whether Defendants violated OCGA § 16-17-2 by the making of loans of $3,000.00 or less and charging usurious interest;

c)  The liability of Defendants for violations of the Payday Lending Act;

d)  The appropriate measure of damages and the appropriate remedies;

e)  Defenses raised by Defendants;

f)  The availability of statutory damages pursuant to OCGA § 16-17-3; and

g)  The need and appropriateness of injunctive relief.

72.

The claims of the named Plaintiff are typical of the claims of the members of the Plaintiff class, which all arise from the same operative facts and are based on the same legal theory, and Plaintiff's claims will thus adequately represent those of the Plaintiff Class Members.

73.

The named Plaintiff will fairly and adequately protect the interest of the Plaintiff Class Members.  Plaintiff has retained counsel with experience in class action litigation, and they are not aware of any interest that might cause them not to vigorously pursue this case.

74.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder is impracticable.  The expense and burden of individual litigation make it virtually impossible for the members of the class to proceed individually, and it is therefore most efficient to resolve all claims based on Defendants' conduct in one forum.

75.

The Plaintiff is aware of no difficulties that will be encountered in the management of this litigation that would render the action unmanageable.  This is not a

class action that will require an analysis of Defendants' conduct as to individual class members.

76.

Plaintiff's and Plaintiff Class Members' claims against Defendants are based on Defendants' general practice of soliciting Georgia residents and the making of loans of $3,000.00 or less and charging usurious interest rates thereon. in violation of OCGA § 16-17-2.   Defendants knowingly engage in this routine, standard practice, and their practices do not vary among members of the proposed Plaintiff class.   The amount of the loans and the interest rates charged and collected can be determined from Defendants' business records.

77.

Prosecution of separate actions by individual members of the Plaintiff class would create adjudications that would be dispositive of the interests of the interests of the other members not parties to the adjudications.

78.

Without a class action mechanism, members of the Plaintiff class would be substantially impaired or impeded in their ability to protect their interests.  The value of claims of the individual class members would be in an amount that makes prosecution outside of the class action uneconomical.

79.

The claims of the Plaintiff and Plaintiff Class Members are meritorious.  The named Plaintiff believes he will prevail on the merits based upon the clear, unambiguous statutory provisions.

80.

A final judgment on the merits of the named Plaintiff's claims would be fully dispositive of the claims and interests of those similarly situated who are not specifically named as a plaintiff in this action.

## COUNT 1 – VIOLATIONS OF THE PAYDAY LENDING ACT

81.

Plaintiff incorporates the preceding paragraphs by reference as if specifically stated herein.

82.

The Georgia Payday Lending Act, OCGA § 16-17-2, states:

> (a) It shall be unlawful for any person to engage in any business, in whatever form transacted, including, but not limited to, by mail, electronic means, the Internet, or telephonic means, which consists in whole or in part of making, offering, arranging, or acting as an agent in the making of loans of $3,000.00 or less unless:
>
>> (1) Such person is engaging in financial transactions permitted pursuant to:
>>
>>> (A) The laws regulating financial institutions as defined under Chapter 1 of Title 7, the "Financial Institutions Code of Georgia";
>>>
>>> (B) The laws regulating state and federally chartered credit unions;
>>>
>>> (C) Article 13 of Chapter 1 of Title 7, relating to Georgia residential mortgages;
>>>
>>> (D) Chapter 3 of Title 7, the "Georgia Industrial Loan Act";
>>>
>>> (E) Chapter 4 of Title 7, relating to interest and usury;
>>>
>>> (F) Chapter 5 of Title 7, "The Credit Card and Credit Card Bank Act," including financial

institutions and their assignees who are not operating in violation of said chapter; or

(G) Paragraph (2) of subsection (a) of Code Section 7-4-2 in which the simple interest rate is not greater than 16 percent per annum;

(2) Such loans are lawful under the terms of:

(A) Article 1 of Chapter 1 of Title 10, "The Retail Installment and Home Solicitation Sales Act";

(B) Article 2 of Chapter 1 of Title 10, the "Motor Vehicle Sales Finance Act"; or

(C) Part 5 of Article 3 of Chapter 12 of Title 44, relating to pawnbrokers[.]

83.

Defendants are engaged in a common enterprise to make, offer, arrange, or act as an agent in the making of loans of $3,000.00 or less to consumers in the State of Georgia, in violation of OCGA § 16-17-2(a).

84.

Defendants are not engaged in financial transactions permitted under OCGA §§ 7-1-1 *et seq.*, the Financial Institutions Code of Georgia.

85.

Defendants are not engaged in financial transactions permitted under the laws regulating state and federally chartered credit unions.

86.

Defendants are not engaged in financial transactions permitted under OCGA §§ 7-1-1000 *et seq.* relating to Georgia residential mortgages.

87.

Defendants have engaged in financial transactions in violation of the Georgia Industrial Loan Act, OCGA §§ 7-3-1 *et seq.* as shown in more detail *infra*.

88.

OCGA § 7-4-2(a)(2) states that:

> Where the principal amount involved is $3,000.00 or less, such rate shall not exceed 16 percent per annum simple interest on any loan, advance, or forbearance to enforce the collection of any sum of money unless the loan, advance, or forbearance to enforce the collection of any sum of money is made pursuant to another law.

89.

Defendants are in clear violation of OCGA § 7-4-2(a)(2).

90.

Defendants are not engaged in financial transactions permitted under OCGA §§ 7-5-1 *et seq.*, the Credit Card and Credit Card Bank Act, and is not a credit card bank, domestic lender, or foreign lender as defined by the Credit Card and Credit Card Bank Act.

91.

The loans made by Defendants to Plaintiff and the putative class members are not lawful loans made pursuant to OCGA §§ 10-1-1 *et seq.*, the Retail Installment and Home Solicitation Sales Act.

92.

The loans made by Defendants to Plaintiff and the putative class members are not lawful loans made pursuant to OCGA §§ 10-1-30 *et seq.*, the Motor Vehicle Sales Finance Act.

93.

The loans made by Defendants to Plaintiff and the putative class members are not lawful loans made pursuant to OCGA §§ 44-12-130 *et seq.*, statutes governing pawn transactions.

94.

Defendants are not licensed under GILA to make, offer, arrange, or act as an agent in the making of loans of $3,000.00 in the State of Georgia pursuant to OCGA § 7-3-8, and are not exempt from the provisions of GILA pursuant to OCGA § 7-3-6.

95.

Neither Western Sky nor CashCall are a bank or thrift chartered under the laws of the United States.

96.

Neither Western Sky nor CashCall are a bank a chartered under the laws of a state other than Georgia that is insured by the FDIC.

97.

Defendants' acts of making, offering, arranging, or acting as agent in the making of loans of $3,000.00 or less in the State of Georgia constitute a violation of the Payday Lending Act pursuant to OCGA § 16-17-2(a).

98.

Defendants' Loan Agreement contains forum selection and choice of law clauses providing that the laws and jurisdiction of the Cheyenne River Sioux Tribe apply to any dispute arising out of the agreement.

99.

As such, the Loan Agreement violates OCGA § 16-17-2(c)(1), which states:

A payday lender shall not include in any loan contract made with a resident of this state any provision by which the laws of a state other than Georgia shall govern the terms and enforcement of the contract, nor shall the loan contract designate a court for the resolution of disputes concerning the contract other than a court of competent jurisdiction in and for the county in which the borrower resides or the loan office is located.

100.

Defendants' Loan Agreement also contains an arbitration provision stating, "[A]ny dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration . . . which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement."

101.

As such, the Loan Agreement violates OCGA § 16-17-2(c)(2), which states:

An arbitration clause in a payday loan contract shall not be enforceable if the contract is unconscionable. In determining whether the contract is unconscionable, the court shall consider the circumstances of the transaction as a whole, including but not limited to:

(A) The relative bargaining power of the parties;

(B) Whether arbitration would be prohibitively expensive to the borrower in view of the amounts in controversy;

(C) Whether the contract restricts or excludes damages or remedies that would be available to the borrower in court, including the right to participate in a class action;

(D) Whether the arbitration would take place outside the county in which the loan office is located or any other place that would be unduly inconvenient or expensive in view of the amounts in controversy; and

(E) Any other circumstance that might render the

contract oppressive.

102.

The Loan Agreement is unconscionable for the following reasons:

- The interest rate of 232.99% of the Loan Agreement is usurious;

- The choice of law and jurisdiction of only the laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation is contrary to Georgia public policy and violative of OCGA § 16-17-2(c)(1);

- The forum selection clause of the territory of Cheyenne River Sioux Tribe is unconscionable as such a forum deprive Plaintiff and the putative class of their day in court;

- arbitration would be prohibitively expensive to the Plaintiff in view of the amounts in controversy; and

- the Loan Agreement prohibits participation in a class action or class-wide arbitral proceeding.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the proposed Plaintiff Class Members pray for judgment and relief as follows:

a.    An order certifying that the action may be maintained as a class action;

b.    Compensatory damages in an amount to be proven at trial, including any damages provided by statute;

c.    A temporary, preliminary and/or permanent order enjoining Deendants from continuing to violate the Payday Lending Act;

d.    A temporary, preliminary and/or permanent order disgorging Defendants of all money collected, freezing Defendants' assets, and requiring

Defendants to pay damages to the Plaintiff Class Members as required by OCGA § 16-17-3;

e.    An order granting Plaintiff his expenses incurred in bringing and prosecuting this action, including attorney fees, expert fees, and costs;

f.    Pre and post-judgment interest, if applicable;

g.    A trial by jury; and

h.    Such other and further relief as the Court may deem just, necessary, or appropriate.

Respectfully submitted, this _27th_ day of _November_, 2013.

HURT STOLZ, PLC

_____
James W. Hurt, Jr.
Georgia Bar No. 380104

345 W. Hancock Ave
Athens, Georgia 30601
(706) 395-2750
Facsimile: (866) 766-9245
jhurt@hurtstolz.com

ARMOR LAW, LLC

Christopher N. Armor
Georgia Bar No. 614061

303 Perimeter Center North
Suite 300
Atlanta, GA 30346
Phone: (678) 690-8489
Fax: (404) 592-6102
chris.armor@armorlaw.com

8/26/13

# WESTERN SKY CONSUMER LOAN AGREEMENT

| Loan No.: | 11494972 | Date of Note: | June 06, 2012 |
|-----------|----------|---------------|---------------|
| | | Expected Funding Date: | June 07, 2012 |
| Lender: | Western Sky Financial, LLC | Borrower: | JOSHUA PARNELL |
| Address: | P.O. Box 370<br>Timber Lake, SD 57656 | Address: | 116 ACADEMY DR<br>TUNNEL HILL, GA 30755 |

**This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.** By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation.

You further agree that you have executed the Loan Agreement as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation; and that this Loan Agreement is fully performed within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.

In this Loan Agreement, the words "you" and "your" mean the person signing as a borrower. "We," "us," "our," and "Lender" mean Western Sky Financial, LLC, a lender authorized by the laws of the Cheyenne River Sioux Tribal Nation and the Indian Commerce Clause of the Constitution of the United States of America, and any subsequent holder of this Note ("Western Sky").

TRUTH IN LENDING DISCLOSURES: The disclosures below are provided to you so that you may compare the cost of this loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we consent to application of state or federal law to us, to the loan, or this Loan Agreement.

## TRUTH IN LENDING ACT DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you | The amount you will have paid after all payments are made as scheduled |
| **232.99 %** | **$3,905.56** | **$1,000.00** | **$4,905.56** |

### PAYMENT SCHEDULE

One payment of $149.00 on July 01, 2012.

24 monthly payments of $198.19 beginning on August 01, 2012.



8/26/13

**Late Charge:**   If a payment is more than 15 days late, you will be charged $29.00.

**Prepayment:**    If you pay off this loan early, you will not have to pay any penalty.

Please see the remainder of this document for additional information about nonpayment, default and any required repayment in full before the scheduled date.

| ITEMIZATION OF AMOUNT FINANCED | |
| --- | --- |
| Amount Financed: | $1,000.00 |
| Amount Paid to Borrower Directly: | $1,000.00 |
| Prepaid Finance Charge/Origination Fee: | $500.00 |

You promise to pay to the order of Western Sky or any subsequent holder of this Note the sum of **$1,500.00**, together with interest calculated at **149.00 %** per annum and any outstanding charges or late fees, until the full amount of this Note is paid. You promise to repay this loan by making, at a minimum, the payments described on the payment schedule listed above.

Payments will be applied first to any outstanding charges or late fees, then to earned interest and finally to principal. The payment schedule described above may change in the event you do not make all payments as scheduled or in the event you accrue any fees.

Interest is calculated on a 360/360 simple interest basis. This means that interest is calculated by dividing the annual Interest Rate by 360, multiplying that number by the outstanding principal balance, and multiplying that number by the number of days the principal balance is outstanding, assuming that each full month is comprised of 30 days.

You may prepay all or any part of the principal without penalty.

If you fail to make any payment due hereunder, the holder of this Note shall have the right, after a 30-day grace period, to declare this note to be immediately due and payable. If you file for an assignment for the benefit of creditors, or for bankruptcy, the holder of this Note shall have the right to declare this Note to be immediately due and payable.

Except as may be provided in the "Arbitration" section of this Note, if we are required to employ an attorney at law to collect any amounts due hereunder, you will be required to pay the reasonable fees of such attorney to protect our interest or to take any other action required to collect the amounts due hereunder.

The Prepaid Finance Charge disclosed above is fully earned upon loan origination and is not subject to rebate upon prepayment or acceleration of this Note.

**LATE FEES.** You will be subject to a late fee of $29.00 if you fail to make your payment within 15 days of the due date. We can collect any late fees immediately via Electronic Funds Transfer (EFT) from your bank account.

**INSUFFICIENT FUNDS.** You will be subject to a fee of $29.00 if any payment you make is returned by your bank for insufficient funds.

8/26/13

**E-SIGN/ELECTRONIC COMMUNICATIONS.** Although federal law does not apply to this Agreement, this Note is in original format an electronic document fully compliant with the Electronic Signatures in Global and National Commerce Act (E-SIGN) and other applicable laws and regulations, and the one, true original Note is retained electronically by us. All other versions hereof, whether electronic or in tangible format, constitute facsimiles or reproductions only. You understand that you have previously consented to receive all communications from us, including but not limited to all required disclosures, electronically.

**CREDIT REPORTS.** You agree that we may obtain credit reports on you on an ongoing basis as long as this loan remains in effect. You also authorize us to report information concerning this account to credit bureaus and anyone else we believe in good faith has a legitimate need for such information. Late payments, missed payments, or other defaults on this account may be reflected in your credit report.

**CALL MONITORING/RECORDING.** You understand that, from time to time, we may monitor or record telephone calls between us for quality assurance purposes. You expressly consent to have your calls monitored or recorded.

**TELEPHONE CALLS.** You hereby agree that in the event we need to contact you to discuss your account or the repayment of your loan, we may telephone you at any number, including any cell phone number provided, and that we may leave an autodialed or prerecorded message or use other technology to make that contact or to communicate to you the status of your account.

**VERIFICATION.** You authorize us to verify all of the information you have provided in obtaining approval of this Loan.

**GOVERNING LAW.** This Agreement is governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe. We do not have a presence in South Dakota or any other states of the United States. Neither this Agreement nor Lender is subject to the laws of any state of the United States of America. By executing this Agreement, you hereby expressly agree that this Agreement is executed and performed solely within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation. You also expressly agree that this Agreement shall be subject to and construed in accordance only with the provisions of the laws of the Cheyenne River Sioux Tribe, and that no United States state or federal law applies to this Agreement. You agree that by entering into this Agreement you are voluntarily availing yourself of the laws of the Cheyenne River Sioux Tribe, a sovereign Native American Tribal Nation, and that your execution of this Agreement is made as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.

**ASSIGNMENT.** We may assign or transfer this Loan Agreement or any of our rights under it at any time to any party.

**WAIVER OF JURY TRIAL AND ARBITRATION.**

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** Unless you exercise your right to opt-out of arbitration in the manner described below, any dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In Arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any Arbitration will be limited to the dispute between yourself and the holder of the Note and will not be part of a class-wide or consolidated Arbitration proceeding.

**Agreement to Arbitrate.** You agree that any Dispute, except as provided below, will be resolved by

representative in accordance with its consumer dispute rules and the terms of this Agreement.

**Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Western Sky or the holder or servicer of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement. For purposes of this Arbitration agreement, the term "the holder" shall include Western Sky or the then-current note holder's employees, officers, directors, attorneys, affiliated companies, predecessors, and assigns, as well as any marketing, servicing, and collection representatives and agents.

**Choice of Arbitrator.** Any party to a dispute, including a Holder or its related third parties, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org; JAMS (1-800-352-5267) http://www.jamsadr.com; or an arbitration organization agreed upon by you and the other parties to the Dispute. The arbitration will be governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes, to the extent that those rules and procedures do not contradict either the law of the Cheyenne River Sioux Tribe or the express terms of this Agreement to Arbitrate, including the limitations on the Arbitrator below. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand and of the arbitration organization you have selected. You also understand that if you fail to notify us, then we have the right to select the arbitration organization. Any arbitration under this Agreement may be conducted either on tribal land or within thirty miles of your residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the Cheyenne River Sioux Tribe's sovereign status or immunity, or (b) to allow for the application of any law other than the law of the Cheyenne River Sioux Tribe of Indians to this Agreement.

**Cost of Arbitration.** We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the Arbitration. Except where otherwise provided by the law of the Cheyenne River Sioux Tribal Nation, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the Arbitration.

**Waiver of Rights.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available by statute, at law, or in equity to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide Arbitration is to be determined solely by a court of competent jurisdiction located within the Cheyenne Rivers Sioux Tribal Nation, and not by the arbitrator. If the court refuses to enforce the class-wide Arbitration waiver, or if the arbitrator fails or refuses to enforce the waiver of class-wide Arbitration, the parties agree that the Dispute will proceed in tribal court and will be decided by a tribal court judge, sitting without a jury, under applicable court rules and procedures.

8/26/13

TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE. The arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation and the terms of this Agreement. The arbitrator must apply the terms of this Arbitration agreement, including without limitation the waiver of class-wide Arbitration. The arbitrator will make written findings and the arbitrator's award may be filed in the Cheyenne River Sioux Tribal Court, which has jurisdiction in this matter. The Arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by a court upon judicial review.

**Small Claims Exception.** All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal in the Cheyenne River Sioux Tribal Small Claims Court for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

**Other Provisions.** This Arbitration provision will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Note, or any amounts owed on my account, to any other person or entity. This Arbitration provision benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect

**Right to Opt Out.** If you do not wish your account to be subject to this Arbitration Agreement, you must advise us in writing at P.O. Box 370, Timber Lake, South Dakota, 57565, or via e-mail at info@westernsky.com. You must clearly print or type your name and account number and state that you reject Arbitration. You must give written notice; it is not sufficient to telephone us. We must receive your letter or e-mail within sixty (60) days after the date your loan funds or your rejection of Arbitration will not be effective. In the event you opt out of Arbitration, any disputes hereunder shall nonetheless be governed under the laws of the Cheyenne River Sioux Tribal Nation.

**Payments.** You have previously authorized and requested us to initiate an automated clearinghouse or other electronic funds transfer ("EFT") from the bank account identified on your Application (the "Bank Account") to make each payment required hereunder on the day it is due. You also authorize us to initiate an EFT to or from the Bank Account to correct any erroneous payment and, in the event any EFT is unsuccessful, to attempt such payment up to two additional times. You understand that unsuccessful EFTs may result in charges by your bank, and you agree that we are not liable for such charges. We will notify you 10 days prior to any given transfer if the amount to be transferred varies by more than $50 from your regular payment amount. You also authorize us to withdraw funds from your account on additional days throughout the month in the event you are delinquent on your loan payments. Your request and authorization for us to initiate EFTs is entirely voluntary, and you may terminate this authorization by notifying us in writing via fax (866-347-0666) or email (customer.service@westernsky.com) soon enough to allow us a reasonable opportunity to act on your termination (generally at least three business days in advance).

**THIS LOAN CARRIES A VERY HIGH INTEREST RATE. YOU MAY BE ABLE TO OBTAIN CREDIT UNDER MORE FAVORABLE TERMS ELSEWHERE. EVEN THOUGH THE TERM OF THE LOAN IS 25 MONTHS, WE STRONGLY ENCOURAGE YOU TO PAY OFF THE LOAN AS SOON AS POSSIBLE. YOU HAVE THE RIGHT TO PAY OFF ALL OR ANY PORTION OF THE LOAN AT ANY TIME WITHOUT INCURRING ANY PENALTY. YOU WILL, HOWEVER, BE REQUIRED TO PAY ANY AND ALL INTEREST THAT HAS ACCRUED FROM THE FUNDING DATE UNTIL THE PAYOFF DATE.**

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS AGREEMENT BEFORE YOU SIGN IT.



HOME     ABOUT US     HOW IT WORKS     CURRENT RATES     CONTACT US

Loan Status     Upload Documents     Change Password     Logout

## Loan Status

Make Payment with Credit Card

| | |
|---|---|
| Due Amount: | $29.00 |
| Due Date: | 8/6/2013 |
| | |
| Loan ID: | 11494972 |
| Loan Amount: | $1,500.00 |
| Interest Rate: | 149.00 % |
| Monthly Payment: | $198.19 |
| Balance: | $1,155.80 |

Pending ACH Payments
No Pending Payments

Today's Payoff Amount     $1,304.39

View Loan Document

| Entry Number | Entry Type | Entry Date | Principal Amount | Interest Payment | Fee Payment | Total Payment Amount |
|---|---|---|---|---|---|---|
| 1 | Payment Made | 7/6/2012 | $0.00 | $149.00 | $0.00 | $149.00 |
| 2 | Payment Made | 8/10/2012 | $11.94 | $186.25 | $0.00 | $198.19 |
| 3 | Payment Made | 9/7/2012 | $13.42 | $184.77 | $0.00 | $198.19 |
| 4 | Payment Made | 10/1/2012 | $15.09 | $183.10 | $0.00 | $198.19 |
| 5 | Payment Made | 10/12/2012 | $0.00 | $0.00 | $50.00 | $50.00 |
| 6 | Payment Made | 10/19/2012 | $0.00 | $0.00 | $37.00 | $37.00 |
| 7 | Payment Made | 11/1/2012 | $16.96 | $181.23 | $0.00 | $198.19 |
| 8 | Payment Made | 12/7/2012 | $19.07 | $179.12 | $0.00 | $198.19 |
| 9 | Payment Made | 1/1/2013 | $21.44 | $176.75 | $0.00 | $198.19 |
| 10 | Payment Made | 1/25/2013 | $0.00 | $0.00 | $29.00 | $29.00 |
| 11 | Payment Made | 2/1/2013 | $24.10 | $174.09 | $0.00 | $198.19 |
| 12 | Payment Made | 3/1/2013 | $27.09 | $171.10 | $0.00 | $198.19 |
| 13 | Payment Made | 4/1/2013 | $30.45 | $167.74 | $0.00 | $198.19 |
| 14 | Payment Made | 5/1/2013 | $34.24 | $163.95 | $0.00 | $198.19 |
| 15 | Payment Made | 6/21/2013 | $38.49 | $159.70 | $0.00 | $198.19 |
| 16 | Payment Made | 7/20/2013 | $43.27 | $154.92 | $58.00 | $256.19 |
| 17 | Payment Made | 8/9/2013 | $48.64 | $149.55 | $58.00 | $256.19 |
| 18 | Payment Due | 8/6/2013 | $0.00 | $0.00 | $29.00 | $29.00 |
| 19 | Future Payment | 9/1/2013 | $54.68 | $143.51 | $0.00 | $198.19 |
| 20 | Future Payment | 10/1/2013 | $61.47 | $136.72 | $0.00 | $198.19 |
| 21—27 | Future Payments | | | | | |
| 28 | Future Payment | 6/1/2014 | $156.78 | $41.41 | $0.00 | $198.19 |
| 29 | Future Payment | 7/1/2014 | $176.70 | $21.49 | $0.00 | $198.19 |




